384 So.2d 1341 (1980)
Salomon Kassin NESSIM, Appellant,
v.
Mickey DeLOACHE, Appellee.
No. 79-1599.
District Court of Appeal of Florida, Third District.
July 1, 1980.
*1342 Kelly, Black, Black, Wright & Earle and Brian P. Patchen, Miami, for appellant.
Beckham, McAiley & Proenza and George E. Schulz, Jr., Miami, for appellee.
Before HUBBART and NESBITT, JJ., and PEARSON, TILLMAN (Ret.), Associate Judge.
NESBITT, Judge.
This is an appeal from a summary judgment entered in favor of the alleged seller of a used yacht on a complaint seeking: (1) rescission of the contract of sale; and (2) damages for fraud and deceit arising out of the sale of the yacht. We find the summary judgment to have been improvidently and prematurely entered and therefore reverse.
Nessim, plaintiff-appellant, brought this action against DeLoache, defendant-appellee, owner and alleged seller of the vessel. DeLoache employed Richard W. Bertram and Company (Bertram), a Florida corporation, for the purpose of selling his sixty-three-foot yacht, the "Mi-Mar."
DeLoache and Bertram were joined as co-defendants and joint tortfeasors in the action below in which it was alleged that they had represented that the yacht was in good condition, knowing that it had a latent *1343 defect.[1] It was also asserted that Bertram employed a "bait and switch" tactic by initially interesting Nessim in a similar, more desirable and seaworthy vessel, then representing that the vessel was not for sale and diverting his attention to the yacht ultimately purchased. In the complaint, it was further alleged that DeLoache and Bertram had superior knowledge in such matters and that Nessim, having no knowledge of yachts or yachting, relied upon Bertram to supply an independent surveyor as called for in the contract of sale. Additionally, it was asserted that this "independent" surveyor, undisclosed to Nessim at the time of the sale, was a former employee of Bertram and performed only a cursory examination upon the vessel which failed to reveal the latent defect.
The circuit court entered a summary final judgment in favor of DeLoache on the basis that: (a) he was not individually liable for the acts of the corporation which owned the vessel; and (b) Nessim's action was barred by the doctrine of caveat emptor.
The record reveals that Bertram sold the yacht to Mi Mar Charters of Miami, Inc., of which DeLoache was sole stockholder and president, on August 18, 1972. The purchase and sale agreement between Nessim and DeLoache, individually, was executed on December 28, 1977. The independent surveyor recommended minor repairs be made to the vessel. Those repairs were completed at Bertram's shipyard prior to the closing. Nessim engaged an interim captain who was aboard the yacht and had an opportunity to inspect the vessel while the repairs were being made prior to consummating the transaction which occurred on January 31, 1978 between Nessim, individually, and Mi Mar Charters of Miami, Inc.
Mi Mar Charters of Miami, Inc. was involuntarily dissolved by the Florida Secretary of State on December 11, 1976 and reinstated on September 13, 1978. Thus it affirmatively appears that during the negotiation, purchase, sale, and consummation of the transaction, Mi Mar Charters of Miami, Inc. enjoyed no corporate existence. Nessim joined DeLoache, individually, pursuant to Section 607.271(5), Florida Statutes (1977) which, in pertinent part, provides:
Any corporation dissolved by the Department of State ... may be reinstated by the Department of State at any time upon approval of an application for reinstatement signed by an officer or director of the dissolved corporation... Whenever the application for reinstatement is approved and filed by the Department of State, the corporate existence shall be deemed to have continued without interruption from the date of dissolution. The reinstatement shall have no effect upon any personal liability of the directors, officers, or agents of the corporation on account of actions taken during the period between dissolution and reinstatement, but the power of the corporation to indemnify such directors, officers, or agents shall extend to actions taken during such period. (emphasis added)
The present case presents the classic reason for the legislative adoption of such a statute and we see no reason to depart from the plain and unambiguous pronouncements therein in the application of the statute in this case.
DeLoache seeks to disavow his liability on the authority of Futch v. Southern Stores, Inc., 380 So.2d 444 (Fla. 1st DCA 1979). Without disagreeing with Futch, we find it readily distinguishable because: (a) in Futch, an inactive corporate officer was sought to be held individually liable; and (b) no fraud was alleged. Consequently, we find the trial court erred in holding that DeLoache was not personally liable pursuant to Section 607.271(5), supra.
We also have the unqualified view that, at the very least, the trial court prematurely entered summary final judgment in favor of DeLoache based on the doctrine of caveat emptor.
*1344 The classic illustration of fraud is where one party having superior knowledge intentionally fails to disclose a material fact, Columbus Hotel Corporation v. Hotel Management Co., 116 Fla. 464, 156 So. 893 (1934); Pryor v. Oak Ridge Development Corporation, 97 Fla. 1085, 119 So. 326 (1928), which is not discoverable by ordinary observation, Kitchen v. Long, 67 Fla. 72, 64 So. 429 (1914); Hirschman v. Hodges, O'Hara & Russell Company, 59 Fla. 517, 51 So. 550 (1910), especially where coupled with a trick or artifice, Joiner v. McCullers, 158 Fla. 562, 28 So.2d 823 (1947); Stackpole v. Hancock, 40 Fla. 362, 24 So. 914 (1898).
A principal is civilly liable for the tortious acts of his agent which are found to be within the course and scope of the agent's employment. Gates v. Utsey, 177 So.2d 486 (Fla. 1st DCA 1965); Van Engers v. Hickory House, 104 So.2d 843 (Fla. 3d DCA 1958); City of Green Cove Springs v. Donaldson, 348 F.2d 197 (5th Cir.1965), even where the agent's acts or representations are fraudulent or deceitful, West Florida Land Co. v. Studebaker, 37 Fla. 28, 19 So. 176 (1896); Donner v. Morse Auto Rentals, Inc., 147 So.2d 577 (Fla. 3d DCA 1962), and even though the principal was not cognizant of his agent's misrepresentations, Wheeler v. Baars, 33 Fla. 696, 15 So. 584 (1894).
At the time summary judgment in favor of DeLoache was entered, his deposition had not been taken. Until DeLoache's deposition is taken, there are genuine issues of material fact remaining as to: (1) whether Bertram was acting within the course and scope of its employment; (2) whether Nessim had a right to rely upon Bertram's representations; and (3) whether Nessim had an opportunity to inspect and learn of the defect whether it be latent or otherwise.
The issue of fraud is not ordinarily a proper subject for summary judgment because, being a subtle matter, fraud requires a full explanation of the facts and circumstances of the alleged wrong to permit a determination whether they collectively constitute fraud, Bryant v. Small, 236 So.2d 150 (Fla. 3d DCA 1970); Alepgo Corporation v. Pozim, 114 So.2d 645 (Fla. 3d DCA 1959), cert. denied 117 So.2d 842 (Fla. 1960), and for that reason such determination is seldom one that can be made in a legally sufficient manner without a trial. Alepgo Corporation v. Pozim, supra.
Reversed and remanded.
NOTES
[1] Discovery disclosed that the vessel had run aground and been partially submerged which resulted in damage to the electrical system.