**O. O. DUBLIN et al., Appellants,**

**v.**

**L. L. VEAL, Appellee.**

Court of Appeals of Kentucky.

Dec. 9, 1960.

Rehearing Denied Jan. 27, 1961.

Nat Ryan Hughes, Murray, David R. Reed, Paducah, for appellant.

Wells Overbey, Murray, for appellee.

PALMORE, Judge.

This action was instituted by the appellee, L. L. Veal, to enforce a $20,000 promissory

note and real estate mortgage executed in his favor by the appellant, O. O. Dublin. Dublin and his wife (who joined in the execution of the mortgage) appeal from a judgment awarding Veal $6,962.67 as the unpaid balance of the note and foreclosing the mortgage. Trial was had by the court without a jury.

The note in question was executed on or about July 24, 1954, bore no interest, and matured 12 months after date. Dublin was the proprietor of an automobile agency. Veal had been lending him money over a period of time beginning in 1948. In 1952 they executed a contract by which Veal agreed to put $20,000 into Dublin's business in return for one-third of the profits from the sale of automobiles and half the profits from automobile finance contracts. The contract was terminable by either party on 90 days' notice, in which event Veal was to be paid the $20,000 and such of the profits as were then due him. Some months before July of 1954 Veal had elected to terminate, and the $20,000 note and mortgage were given in satisfaction of Dublin's obligation under the 1952 contract to repay that sum to Veal.

When the 1952 contract was made Veal paid Dublin $10,000 in cash and gave him $10,000 in the form of a promissory note. This was the $20,000 put into Dublin's business by Veal under the contract. Veal testified that he paid the $10,000 note off in 1953, $5,000 by check and $5,000 in cash. Dublin denied that he ever received this $10,000, and he set it up by counterclaim. He produced the note, but in the course of the trial Veal claimed Dublin evidently had retrieved it from the waste basket in his office after pretending to destroy it upon receipt of the final balance in cash. In his counterclaim and testimony Dublin also claimed he had made numerous payments to Veal and had, in fact, mistakenly overpaid him to the extent of several thousand dollars. Except, however, for an admitted credit of $8,055.92 and further payments aggregating $4,981.41, made prior to execution of the $20,000 note but which Veal

conceded should be credited against it, Veal testified that all payments proved by Dublin were on account of other loans and transactions or on the profit account under the 1952 contract. (Actually, Veal said he had received some $6,000 as his share of his profits, and his testimony gives the impression that this $4,981.41 was a part of that sum, in which event, of course, it was not creditable against the $20,000 principal amount.)

▌ As the foregoing summary indicates, the evidence of the parties on the essential matters in issue was directly in conflict. They conducted their financial transactions in loose fashion, and neither kept complete or adequate records. The trial court was obliged to take the word of one man against that of the other. He accepted Veal's, and his judgment represented the $20,000 evidenced by the 1954 note less the credits of $8,055.92 and $4,981.41 (appellee does not cross-appeal on the latter item). There is no reasonable basis on which this court could say that his findings were not supported by substantial evidence and were therefore clearly erroneous. This conclusion disposes of the principal ground of appeal.

Dublin pleaded usury, and as best we can understand it he appears to contend that Veal cannot keep the profits received by him under the 1952 contract and recover the full amount of the principal. We do not see, however, where the usury comes in. The loan arrangement represented by the 1952 contract, though it may have resulted in profits exceeding the legal interest limit (KRS 360.010), was not shown to be usurious.

. "Where, under a contract for the payment or repayment of money, the payment of interest on the principal sum is subject to a contingency, so that the creditor's entire profit or return is put in hazard, the interest so contingently payable need not be limited to the maximum fixed by the usury statutes, provided the contract is made in good faith and without intention to

evade or avoid the usury laws. Thus, a loan contract stipulating for the payment, in lieu of interest, of a portion of the profits of an enterprise to the lender as a partner therein is not usurious, even though the share of the profits to be paid to him is so large as to seem unconscionable." 91 C.J.S. Usury § 31, P. 609. See also 55 Am.Jur. 351 (Usury, § 37).

■ Though Veal may or may not have been a partner in the technical sense, the principle is the same. Payment for the use of his money was contingent on the success of a commercial enterprise, wherein the risk of receiving less than the legal rate of interest, or even no profit at all, was real and substantial.

The judgment is affirmed.